R. Scott Weide, Esq.
Nevada Bar No. 5541
*sweide@weidemiller.com*
Kendelee L. Works, Esq.
Nevada Bar No. 9611
*kworks@weidemiller.com*
**WEIDE & MILLER, LTD.**
7251 W. Lake Mead Blvd., Suite 530
Las Vegas, NV 89128-8373
Tel. (702) 382-4804
Fax (702) 382-4805

Otto Lee, Esq. (*pro hac vice to be filed*)
California Bar No. 173987
*olee@iplg.com*
Kevin Viau, Esq. (*pro hac vice to be filed*)
California Bar No. 275556
*kviau@iplg.com*
**INTELLECTUAL PROPERTY LAW GROUP, LLP**
12 South First Street, 12th Floor
San Jose, CA 95113-2427
Tel. (408) 286-8933
Fax (408) 286-8932

Attorneys for Shenzhen Membrane
Precise Electron, Ltd.

## UNITED STATES DISTRICT COURT

### DISTRICT OF NEVADA

| | |
|---|---|
| AEVOE CORP., a California corporation, | Case No.: 2:12-cv-00054-GMN-PAL |
| Plaintiff, | **DEFENDANT'S ANSWER AND OPPOSITION TO TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |
| v. | |
| SHENZHEN MEMBRANE PRECISE ELECTRON, LTD., a China corporation, | |
| Defendant. | |

### INTRODUCTION

Aevoe Corp. ("Plaintiff" or "Aevoe") filed a complaint in this Court January 11, 2012 against Shenzhen Membrane Precise Electron, Ltd. ("Defendant" or "Shenzhen Membrane") alleging infringement of its patent for a touch screen device protector.  Aevoe discovered the alleged infringement during the CES tradeshow in Las Vegas.  In addition to filing a complaint

for patent infringement, Aevoe also requested issuance of a temporary restraining order, seizure order, and order to show cause regarding a preliminary injunction pursuant to Fed. R. Civ. P. 65. The Court granted these orders January 12, 2012 and set a hearing for January 23, 2012 to determine whether the drastic remedy of a preliminary injunction restraining Shenzhen Membrane's allegedly infringing activities should issue.  Because Aevoe fails to show likelihood of success on the merits of its patent infringement claims, irreparable injury, a balance of hardships in its favor, or that preliminary injunctive relief would be in the public interest, the request for preliminary injunction should be denied and any injunctive remedy currently in place should be lifted.

## FACTUAL BACKGROUND

Since 2004, Shenzhen Membrane has been manufacturing screen protectors for various electronic devices.  Zheng Decl. ¶ 3, attached hereto as Exhibit 1.  These devices include without limitation laptop computers, GPS devices, tablets, mobile phones, and cameras.  *Id.* Among the wide variety of adhesive screen protectors Shenzhen Membrane produces are protectors with clear, matte, mirror, privacy, anti-glare, anti-fingerprint, and decorated or printed finishes and effects.  Shenzhen Membrane produces these protectors under its "I Love My Cover" and "Membrane" brands.  *Id.* Ex. C.  Shenzhen Membrane uses technologies in its screen protectors including silicon adhesive to reduce residue on the screen after removal, polarizing micro-louver technology for privacy screen protectors, and nano-memory technology for increased protection from high levels of abrasion.  *Id.*  None of the products sold by Shenzhen Membrane is manufactured according to the specifications of Figure 3 of Aevoe's U.S. Patent No. 8,044,942 ("the '942 patent").  *Id.* ¶ 6.  Further, most of Shenzhen Membrane's products, including its "I Love My Cover" products, do not incorporate technology that allows the protector's transparent window to remain suspended near but not in contact with the screen of the device accomplished by a spacer along the outer perimeter of the window, the key characteristic of the '942 patent.  *Id.*  These products adhere to and contact the screen of the electronic device directly.

Shenzhen Membrane sells its products on an OEM and ODM basis.  Its products are sold

1  in the United States, China, United Kingdom, Germany, Italy, Turkey, Japan, South Korea,
2  Singapore, Thailand, Indonesia, Malaysia, Brazil, Venezuela, Canada, and Mexico. *Id.* ¶ 4.
3  Shenzhen Membrane has manufactured products specifically for Verizon Wireless. *Id.* Each
4  year Shenzhen Membrane attends two tradeshows in order to attract new customers and
5  introduce its product lines. These tradeshows are the Hong Kong Electronics Fair, which
6  Shenzhen Membrane has attended since 2010, and the International Consumer Electronics Show
7  ("CES") in Las Vegas, which Shenzhen has attended since 2011. *Id.* ¶ 7.

8        CES in Las Vegas attracts major players in the technology industry from 142 countries.
9  In 2011, nearly 150,000 people attended the four-day tradeshow. Companies must pay a
10  substantial fee in order to show at CES, and Shenzhen Membrane paid approximately $40,000
11  to have an exhibit at this year's CES, held January 10, 2012 to January 14, 2012. This event
12  was critical to Shenzhen Membrane as a means for attracting new customers for its developing
13  screen protector business. Many of Shenzhen Membrane's current customers were present at
14  the tradeshow to view Shenzhen Membrane's exhibit and current products. *Id.* ¶ 8.

15        On January 13, 2012, Shenzhen Membrane was served with a complaint for patent
16  infringement alleged by Aevoe. Further on that date, Shenzhen Membrane's products and
17  promotional materials were seized at the CES tradeshow pursuant to the temporary restraining
18  order and seizure order granted by this Court. Products and advertising materials were seized
19  indiscriminately and without regard to their relationship to the patent at issue. *Id.* The
20  individuals carrying out the seizure pursuant to the temporary restraining order made certain to
21  create a loud and public display in an attempt to damage Shenzhen Membrane's reputation. *Id.*
22  In fact, several bystanders were so disturbed by the lack of decorum displayed by those seizing
23  Shenzhen Membrane's products that they attempted to persuade the individuals to act in a more
24  judicious manner in their seizure. *Id.* In the aftermath of these brash actions, over ten of
25  Shenzhen Membrane's international customers have expressed concerns about Shenzhen
26  Membrane and its products. *Id.* ¶ 10.

27        Based on the facts and information currently available, Shenzhen Membrane believes
28  preliminary injunctive relief is not warranted in this case and shows cause accordingly.

# ARGUMENT

As stated by the Supreme Court, a preliminary injunction is an extraordinary remedy which is not granted as a matter of right. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 9 (2008). Additionally, courts have repeatedly held that a preliminary injunction in the context of a patent infringement suit is a drastic remedy that should not be granted lightly or routinely. *See Progressive Games, Inc. v. Suffle Master, Inc.*, 69 F. Supp. 2d 1276, 1287 (D. Nev. 1999) (citing *Intel Corp. v. ULSI System Technology, Inc.*, 995 F.2d 1566, 1568 (Fed. Cir. 1993); *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1554 (Fed. Cir. 1995). While this Court is within its discretion to grant preliminary injunctive relief in the case of alleged patent infringement, it should do so only after Plaintiff has satisfied the heavy burden of the preliminary injunction standard. The standard for determining the appropriateness of a preliminary injunction is the same in patent cases as in cases involving other areas of the law. *High Tech Med.* at 1554. In order qualify for a preliminary injunction, a patent owner must make a four-part showing of (1) reasonable likelihood of success on the merits, (2) irreparable harm without the preliminary injunction, (3) a balance of hardships tipping in the patent owner's favor, and (4) the injunction is in the public interest. *E.g.*, *Winter* at 20; *Mentor Graphics Corp. v. Quickturn Design Sys Inc.*, 150 F.3d 1374, 1377 (Fed. Cir. 1998); *Bell & Howell Document Mgmt. Prods. Co. v. Altek Sys.*, 132 F.3d 701, 705 (Fed. Cir. 1997); *Illinois Tool Works, Inc. v. Grip-Pak, Inc.*, 906 F.2d 679, 681 (Fed. Cir. 1990). The Federal Circuit has further specified that a showing on the first two factors of likelihood of success on the merits and irreparable harm is indispensable for a grant of preliminary injunctive relief. *Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1556 (Fed. Cir. 1994). Aevoe makes either no showing or an insufficient showing as to each of the four prongs of the preliminary injunction standard, and is thus not entitled to a preliminary injunction restraining the allegedly infringing products and activities of Shenzhen Membrane.

**A.    Aevoe Is Not Reasonably Likely to Succeed on the Merits Because Substantial Questions Exist As to Validity and Infringement**

According to the Patent Act, a court "may grant injunctions in accordance with the

principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable," 35 U.S.C. § 283.  There are two elements a plaintiff must prove in a claim of patent infringement:  ownership of a valid patent, and infringement of that patent.  35 U.S.C. § 271.  Consequently, there are two elements the patent owner must show to establish likelihood of success on the merits to obtain a preliminary injunction.  In order to demonstrate a likelihood of success on the merits, the patentee has to show that, in light of the presumptions and burdens that will inhere at a trial on the merits, (1) the alleged infringer likely infringes the patent, and (2) the claims of the patent will likely withstand alleged infringer's challenges to validity.  *Gillette Co. v. Energizer Holdings, Inc.*, 405 F.3d 1367, 1370 (Fed. Cir. 2005) (citing *Amazon. com, Inc. v. Barnesandnoble. com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001)).  Aevoe fails to make a sufficient showing of either validity or infringement of its patent.

**1.     There exists a substantial question as to the validity of Aevoe's '942 patent**

By statute, an issued patent is presumed valid.  35 U.S.C. § 271.  However, when a patentee requests a preliminary injunction against alleged infringement, courts refuse to rely solely on the presumption of validity to establish probability of success on the merits.  *See Chrysler Motors Corp. v. Auto Body Panels of Ohio Inc.*, 908 F.2d 951 (Fed. Cir. 1990) (holding district court could reasonably conclude that patent's validity was in question in view partly of expert's affidavit establishing obviousness).  "At the preliminary injunction stage, because of the extraordinary nature of the relief, the *patentee* carries the burden of showing likelihood of success on the merits with respect to the patent's validity, enforceability, and infringement."  *Nutrition 21 v. United States*, 930 F.2d 867, 869-870 (Fed. Cir. 1991) (holding district court erred in failing to adequately analyze alleged infringer's arguments of invalidity and misplacing the burden of proving validity once validity questioned by alleged infringer).  The burden is thus on Aevoe to not just assert the existence of an issued patent, but to make a clear showing of validity and consequently likelihood of success on the merits.  *See Atlas Powder Co. v. Ireco Chems.*, 773 F.2d 1230, 1233 (Fed. Cir. 1985).

Plaintiff asserts only that its '942 patent is valid based on the presumption of validity of 35 U.S.C. § 282., and the fact that it has not yet expired.  Emergency Ex Parte Application at 6.

This is clearly an insufficient showing of validity pursuant to the dictates of the Federal Circuit and the heightened requirement of showing validity in the context of a preliminary injunction. There is a substantial question of the patent's validity as evidence tends to show Aevoe's patent fails one ore more of the requirements of patentability, including novelty and nonobviousness. *See New England Braiding Co., Inc. v. A.W. Chesterton Co.*, 970 F.2d 878, 882-883 (Fed. Cir. 1992). The idea of the first claim of the '942 patent of inserting a spacer to separate touch screen from transparent surface so that the surface is suspended near but not in contact with the screen is not new to the relevant industry. Zheng Decl. ¶ 5. In fact, this concept was contemplated years ago in the mobile phone industry, prior to Plaintiff's date of invention. The famous Apple iPhone 3G smartphone introduced in June 2008 uses the same method described in Aevoe's patent of spacing a transparent surface near but not in contact with touch screen component using a spacer. *Id.* The iPhone 3G uses a black rectangular spacer around the perimeter of the device to space a transparent service away from but very near a touch screen component, thereby preserving touch screen functionality of the device. *Id.* Ex. B. Because of this relevant prior art, Plaintiff fails to make a clear showing of validity to establish likelihood of success on the merits.

The courts additionally use several tools in assessing whether the patentee has made a clear showing of validity of the patent at issue. Courts have long held that in the context of a preliminary injunction motion, the patent holder may use a prior adjudication of patent validity involving a different defendant as evidence supporting its burden of proving its burden of proving likelihood of success on the merits. *See, e.g.*, *Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1452 (Fed. Cir. 1988); *H.H. Robertson, Co. v. United Steel Deck, Inc.*, 820 F.2d 384, 388 (Fed. Cir. 1987). Aevoe asserts no prior adjudication in which the '942 patent was deemed valid. In fact, Aevoe cites another pending litigation filed along with the present suit in which Aevoe claims infringement. There has been no judgment or determination regarding patent validity in this proceeding, and so the proceeding may not be used to show validity of the '942 patent. Courts have also long held that evidence of acquiescence by an industry to a patent owner's rights provides support for probability of validity of the patent. *See, e.g., Eli Lilly &*

1  *Co. v. Generix Drug Sales, Inc.*, 460 F.2d 1096, 1099 (5th Cir. 1972); *Blount v. Societe Anonym
2  du Filtre Chamberland System Pasteur*, 53 F. 98, 102-103 (6th Cir. 1892) (stating it is well
3  settled that in determining likelihood of success and validity of patent, patentee may show it
4  exercised its rights in patent for years, during which no other person sold products embodying
5  the patent).  Plaintiff's '942 patent was only issued October 25, 2011.  There has clearly been
6  insufficient time for industry competitors to acquiesce to the patent.

7  Aevoe cannot sustain its burden of showing validity of the patent at issue.  There exists
8  well-known prior art which raises a substantial question of the validity of the patent.  There is
9  also neither prior adjudication establishing validity of the patent, nor years of acquiescence to
10 the patent by the screen protector industry.  By failing to show validity of the '942 patent,
11 Plaintiff cannot satisfy the first prong of likelihood of success on the merits.

12 **2.  Some or all of Shenzhen Membrane's products are likely to be shown as not
13 infringing the '942 patent**

14 In addition to a clear showing of validity of the patent at issue, where the alleged
15 infringer disputes infringement, the courts uniformly require the patentee to make a strong
16 showing of probable success in proving infringement.  *See Conair Group, Inc. v. Automatik
17 Apparate-Maschinenbau Gmbh*, 944 F.2d 862, 865-866 (Fed. Cir. 1991); Donald S. Chisum,
18 *Chisum on Patents* § 20.04[1][d].  "Denial of a preliminary injunction does not require that
19 noninfringement be clear beyond all question."  *Illinois Tool Works, Inc. v. Grip-Pak, Inc.*, 906
20 F.2d 679, 682 (Fed. Cir. 1990).  In determining the meaning and scope of the patent claims
21 asserted, then comparing the properly construed claims to the allegedly infringing devices or
22 acts of Defendant, most of Defendant's products cannot be said to be infringing.  *See Oakley,
23 Inc. v. Sunglass Hut Int'l*, 316, F.3d 1331, 1339 (Fed. Cir. 2003).  These products, including all
24 "I Love My Cover" protectors, have transparent portions which completely come into contact
25 with the touch screen portion, in contrast to the key element claimed in Plaintiff's patent of the
26 transparent potion being near the touch screen but not in contact with the touch screen.  Zheng
27 Decl. ¶ 6. Moreover, Shenzhen Membrane manufactures no products according to Figure 3 of
28 the '942 patent, that is, with two different materials comprising the protector as in Figure 3.  *Id.*

KLW-W-0141r2                                                7

1  As the preliminary injunction sought by Aevoe attempts to reach products clearly outside the
2  realm of the '942 patent, there is a substantial question of infringement and lack of showing of
3  likelihood of success on the merits.

4  **B.     Aevoe Will Not Suffer Irreparable Harm Without a Preliminary Injunction**

5  A plaintiff cannot suffer irreparable harm if it can obtain full compensation through the
6  remedy at law of money damages awarded after trial.  The requirement that a plaintiff
7  requesting a preliminary injunction show irreparable harm stems from the general rule that
8  equitable relief cannot be granted unless the plaintiff shows the remedy at law is inadequate.
9  *Chisum on Patents* § 20.04[1][e].  While the Federal Circuit formerly held that irreparable harm
10 should be presumed where the patentee clearly established validity and infringement, *Smith
11 Int'l, Inc. v. Hughes Tool Corp.*, 718 F.2d 1573, 1581 (Fed. Cir. 1983), this presumption has
12 since been abrogated.  The Supreme Court first put the kibosh on this presumption in holding
13 that broad classifications and categorical rules have no place in the inquiry of whether the
14 equitable remedy of a preliminary injunction should be issued.  *eBay Inc. v. MercExchange,
15 L.L.C.*, 547 U.S. 388, 393 (2006).  Following *eBay*, the Federal Circuit put to rest the question
16 of whether there remains a rebuttable presumption of irreparable injury where likelihood of
17 success on the merits is shown and confirmed that eBay jettisoned the presumption of
18 irreparable harm as it applies in assessing issuance of preliminary injunctive relief.  *Robert
19 Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1149 (Fed. Cir. 2008).  With no presumption on
20 which to rely, Aevoe fails to show anything approaching irreparable injury to be suffered
21 without a preliminary injunction.

22 A critical factor in assessing irreparable harm to be suffered by the pantentee without a
23 preliminary injunction is the adequacy of money damages.  *eBay* at 391.  The defendant's ability
24 or inability to pay money damages at the end of a lawsuit works hand in hand with the rule that
25 money damages must be inadequate to warrant injunctive relief.  A forward-looking damages
26 award would not be a meaningful remedy if the defendant does not have the ability to pay that
27 damages award.  *See Robert Borsch* at 1156.  Conversely, a court may base at least in part its
28 decision to deny a preliminary injunction on the alleged infringer's ability to pay for a potential

damages award. *See Illinois Tool Works* at 683. Plaintiff fails to assert any grounds for questioning Defendant's ability to pay for a potential damages award, or indeed any grounds at all to establish irreparable injury. Defendant in fact is a reputable business and a leading screen protector manufacturer that had never been accused of infringing the intellectual property of another prior to this lawsuit and is doing business in at least sixteen countries. Zheng Decl. ¶¶ 3, 4. Shenzhen Membrane has further manufactured products on behalf of large mobile phone companies such as Verizon Wireless. *Id.* ¶ 4. There is simply nothing alleged by Plaintiff and nothing to indicate that Defendant would not be able to pay for money damages and that this legal remedy would not be sufficient to address Plaintiff's potential injury.

Other elements courts look for in assessing irreparable harm include *unrebutted* evidence of loss of market share, customers, and access to potential customers. *See Robert Borsch* at 1153. A claim of irreparable harm to establish the need for a preliminary injunction based on potential lost sales cannot be deemed to alone manifest irreparable harm. *See Illinois Tool Works* at 683. The crux of Aevoe's argument in requesting the temporary restraining order was the alleged harm it would suffer during the period of CES. Aevoe claimed it would lose full year orders from customers if Shenzhen Membrane was allowed to offer and display the allegedly infringing products unfettered during CES. Aevoe claims no harm whatsoever to be suffered without a preliminary injunction after the close of CES. With the immediate threat of losing customers and sales during the critical time period of CES gone with the close of CES, Aevoe can claim no irreparable harm if the preliminary injunctive relief is not continued, and alleges no more than conclusory statements of loss of income, loss of goodwill, and dilution of the '942 patent. Such conclusory statements of irreparable harm, without factual statements of the loss of sales or the circumstances of their loss, are insufficient to establish irreparable harm and warrant issuance of a preliminary injunction. *Nadya, Inc. v. Majestic Metal Specialties, Inc.*, 127 F.Supp. 467, 468 (S.D.N.Y. 1954).

Where a plaintiff delays in bringing suit to enforce its patent rights, a court may properly conclude that such delay constitutes an implicit admission by the plaintiff that it is not suffering irreparable harm, that it can wait for a remedy, and that the drastic measure of a preliminary

1   injunction is not warranted.  *See High Tech Medical Instrumentation, Inc. v. New Image*
2   *Industries, Inc.*, 49 F.3d 1551, 1557 (Fed. Cir. 1995).  In the present case, Plaintiff's '942 patent
3   did issued recently, October 25, 2011.  However, Plaintiff has only asserted rights in its patent,
4   namely the right to exclude, during this year's CES tradeshow with the filing of two patent
5   infringement lawsuits.  By only filing suit during CES, Plaintiff has demonstrated that it is only
6   likely to suffer irreparable injury, if any at all, during CES, which has now concluded.  That
7   Aevoe delayed in seeking a temporary restraining order and preliminary injunction until CES
8   shows, that, now that CES is over, the status quo does not irreparably damage Aevoe.  *See*
9   *Nutrition 21* at 872.

10          Further, neither difficulty of calculating loss in market share, nor speculation that such
11  losses might occur, amount to justification for the extraordinary relief of injunction before trial.
12  *Id.* at 871.  Possible market share loss would apply in every case in which the patentee practices
13  the invention, and make preliminary injunction available in every such case.  *Id.*  Plaintiff's
14  mere assertions and speculations that loss in market share might occur are insufficient to
15  establish irreparable harm.

16          Aevoe, in citing *Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1328 (Fed. Cir. 2008),
17  seems to advocate for a per se rule that an alleged infringer's violation of a patent owner's right
18  to exclude constitutes irreparable harm warranting a permanent injunction.  Such a rule though
19  runs clearly contrary to a long history of preliminary injunction jurisprudence and such a rule
20  conflates infringement with irreparable injury, affording the right to preliminary injunction in
21  literally any case of alleged patent infringement.  As stated in *Winter* by the Supreme Court, a
22  preliminary injunction is an extraordinary remedy that should not be granted routinely and
23  should not be available in just any case of alleged patent infringement.

24  **C.      The Balance of Hardships Tips In Shenzhen Membrane's Favor As Likelihood of**
25  **          Success Has Not Been Clearly Shown and Shenzhen Membrane Has Suffered**
26  **          Substantial Injury Already**

27          Once the patent owner establishes likelihood of success on the merits and irreparable
28  injury, it is true that a court will usually grant relief, unless the balance of relative hardships to

the parties tips decidedly in defendant's favor.  *See Chisum on Patents* § 20.04[1][f][i].  The balance of hardships or equities will tilt in the defendant's favor where defendant uses an infringing apparatus and does not directly compete with plaintiff in manufacture and sale, *e.g., Gilbert & Barker Mfg. Co. v. Bussing*, 10 F. Cas. 348, 349 (No. 5416), where defendant is a small company with little impact on plaintiff's overall market, *see, e.g., Tensar Corp. v. Tenax Corp.*, 24 U.S.P.Q. 1605, 1614 (D. Md. 1992) (holding that preventing defendant from competing during pendency of litigation would have serious and adverse effect on defendant's ability to establish a market if its products later found to be non-infringing), or where injunction would idle a substantial manufacturing operation.  In this case though, the lack of clear showing of likelihood of success and the likelihood that Defendant will suffer substantial irreparable harm tips the balance of equities in Defendant's favor.

      A court must be able to deny a preliminary injunction based on balancing of equitable factors, whatever the showing of likelihood of success.  *See Illinois Tool Works* at 683 (citing *Roper Corp. v. Litton Sys.*, 757 F.2d 1266, 1272-73 (Fed. Cir. 1986)).  Critical among the equitable factors to be balanced is the likely harm to the defendant if the preliminary injunction is granted.  A preliminary injunction is a drastic remedy and requiring withdrawal of the alleged infringer's products from the market can have a devastating impact.  *Id.*  The impact of a preliminary injunction on a defendant can be particularly devastating where the defendant is seeking to gain a foothold in the industry.  *See Illinois Tool Works Inc. v. Grip-Pak Inc.*, 725 F. Supp. 951, 958-59 (N.D. Ill. 1989), *aff'd*, 906 F.2d 679 (Fed. Cir. 1990) (holding the effect of an injunction on the accused cannot be ignored).  While Defendant has enjoyed some success in its touch screen protector business and sells to over a dozen countries, it was seemingly unknown to Plaintiff prior to CES.  If a preliminary injunction is not granted, but infringement is later found, Aevoe will recover damages, while if preliminarily enjoined, but infringement is later not found, Shenzhen Membrane will be substantially harmed in terms of lost sales opportunities in the United States.  *See id*.  Additionally, Aevoe's showing of likelihood of success is not a strong one.  Where infringement is not clear, harm to the defendant must especially be given due weight.  *See id.*  In the status quo prior to CES, Aevoe attained extraordinary market success

Case 2:12-cv-00054-GMN -PAL   Document 16   Filed 01/19/12   Page 12 of 14

with its protectors, even with the presence of competitors. Lin Decl. ¶ 2. Aevoe would not be harmed by denial of a preliminary injunction because it could continue as before CES, with the opportunity to recover damages after trial. Shenzhen Membrane on the other hand has already been substantially and irreparably harmed by preliminary injunctive relief. Individuals effectuating seizure of its goods at CES acted overzealously and caused severe and unnecessary damage to its reputation. Zheng Decl. ¶¶ 7, 8. Defendant's products and samples were seized without regard to the actual patent at issue. *Id.* Protectors entirely in contact with the touch screen and clearly not infringing Plaintiff's patents were taken indiscriminately. Shenzhen Membrane's customers quickly learned of the CES scene caused by the individuals effecting seizure and its entire sales operation in the United States is threatened. Id. ¶ 10. With infringement by no means clearly established, such injury to the Defendant is beyond what can be tolerated in a balance of equities. Therefore, the Court should deny the requested preliminary injunction and find the balance of hardships tips in Defendant's favor.

### D.     Issuance of a Preliminary Injunction Runs Against the Public Interest

Only rarely is the public interest affected by the grant or denial of a preliminary injunction in a patent case. *Chisum on Patents* § 20.04[1][f][ii]. Additionally, the courts have held that the adverse affect to competition by allowing a preliminary injunction is often offset by the public interest in the patent right and the policies behind the patent system. *Eli Lilly & Co. v. Premo Pharm. Labs.*, 630 F.2d 120, 137 (3d Cir. 1980). In other words, the most common considerations of the public interest on either side of the preliminary injunction question tend to balance each other out.

In the present case, commercial disruption caused by a preliminary injunction may adversely affect the public interest. S*ee Atari Corp. v. Sega of America Inc.*, 32 U.S.P.Q.2d 1237, 1244 (N.D. Cal. 1994) (considering harm to defendant of laying off employees as factor in assessing equitable interests); *Archive Corp. v. Cipher Data Prods. Inc.*, 12 U.S.P.Q.2d 1464, 1469 (C.D. Cal. 1988) (holding equitable interests weighed in defendant's favor where injunction would force defendant to lay off employees and would leave third party manufacturers without a supply). Defendant will be forced to lay off employees if a preliminary

KLW-W-0141r2                                                    12

injunction is granted and all its business in the United States is threatened.  Zheng Decl. ¶ 10. Such consideration of the public interest warrants denying the preliminary injunction and waiting until the case may be heard on its merits before issuance of a remedy, especially one as extraordinary as a preliminary injunction.

Because Aevoe fails to make a sufficient showing as to each of the four factors this Court must assess in determining whether a preliminary injunction should issue, the requested preliminary injunction should be denied and any preliminary injunctive relief currently in place should be lifted.

Dated:  January 19, 2012

Respectfully submitted,

**WEIDE & MILLER, LTD.**

By: */s/ Kendelee L. Works*

R. Scott Weide, Esq.
Kendelee L. Works, Esq.
7251 W. Lake Mead Blvd., Suite 530
Las Vegas, NV 89128

Otto Lee, Esq. (*pro hac vice to be filed*)
Kevin Viau, Esq. (*pro hac vice to be filed*)
INTELLECTUAL PROPERTY
LAW GROUP, LLP
12 South First Street, 12th Floor
San Jose, CA 95113-2427

Attorneys for Shenzhen Membrane Precise Electron, Ltd.

# CERTIFICATE OF SERVICE

I hereby certify that I am an employee of Weide & Miller, Ltd. and on January 19, 2012, I served the foregoing **DEFENDANT'S ANSWER AND OPPOSITION TO TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** via the Court's CM/ECF filing system on all counsel of record and parties as listed.

Jeffrey Sylvestri, Esq.
Josephine Binnetti McPeak, Esq.
MCDONALD CARANO WILSON, LLP
2300 West Sahara Avenue, Suite 100
Las Vegas, NV 89102

David S. Bloch, Esq. (*pro hac vice pending*)
Jennifer Golinveaux, Esq. (*pro hac vice pnding*)
K. Joon Oh, Esq. (*pro hac vice pending*)
Beth A. Derby, Esq. (*pro hac vice pending*)
WINSTON & STRAWN, LLP
12 South First Street, 12th Floor
101 California Street
San Francisco, CA 94111

Attorneys for Plaintiff

/s/ Kendelee L. Works
An employee of WEIDE & MILLER, LTD.