# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

AEVOE CORP., )
                              )
                Plaintiff, )       Case No. 2:12-cv-00054-GMN-PAL
                              )
vs. )       **ORDER**
                              )
SHENZHEN MEMBRANE PRECISE )
ELECTRON LTD., )
                      Defendant. )
_____ )

The court conducted a hearing on an Order to Show Cause on June 12, 2012. Josephine McPeak and David Bloch appeared on behalf of the Plaintiff. Ryan Gile and Otto Lee appeared on behalf of the Defendant. The court has considered Defendant Shenzhen's Response to Order to Show Cause (Dkt. #62), Aevoe's Response in Support of Monetary Sanctions (Dkt. #63), the Declaration of David S. Bloch (Dkt. #64), the Declaration of Josephine Binetti McPeak in Support of Aevoe's Response (Dkt. #65), the Declaration of K. Joon Oh (Dkt. #66), and the arguments of counsel at the hearing.

## BACKGROUND

The Complaint (Dkt. #1) in this case was filed January 11, 2012, and involves an action for patent infringement. The district judge entered a Temporary Restraining Order (Dkt. #10) on January 12, 2012, and entered an Order to Show Cause why a Preliminary Injunction Should Not Issue (Dkt. #10) January 12, 2012. The show cause hearing was held on January 23, 2012, and Amended Temporary Restraining Orders (Dkt. ##24, 27) were entered January 24, 2012. A Preliminary Injunction (Dkt. #31) was entered January 26, 2012. Defendant Answered (Dkt. #32) the complaint on February 1, 2012, and filed a Motion for Relief from Preliminary Injunction Order (Dkt. #35) on

February 17, 2012.  The district judge granted in part the motion for relief and entered an Amended Preliminary Injunction (Dkt. #58) on May 1, 2012.

The undersigned entered an Order (Dkt. #52) approving the parties' proposed discovery plan and scheduling order on March 27, 2012.  The proposed plan was submitted in compliance with LR 26-1(c) and 16.1 governing patent cases.  The parties requested, and received, an April 26, 2012, pre-claim construction settlement conference in accordance with the deadlines established by LR 16-1.  The court entered a separate Order (Dkt. #56) on April 16, 2012, scheduling the pre-claim construction settlement conference.  The order to show cause was entered when the Defendant failed to comply with that order.

The order to show cause was issued for the following reasons:

1.      Counsel for Plaintiff complied with the court's order scheduling the settlement conference and appeared with trial counsel, local counsel, and a fully-authorized representative of the client.  Counsel for Defendant was represented by local counsel, Ryan Gile.  No client representative was present, and California trial counsel for Defendant, Otto Lee, was also not present.  Mr. Gile advised the court and opposing counsel that he had just learned that Mr. Lee would not be attending the settlement conference.  Mr. Gile understood that Mr. Lee was running for political office and was too busy to attend in person.

2.      Mr. Gile indicated that he believed the parties were essentially in agreement about the terms of a stipulated permanent injunction that would resolve this case, and that he was prepared to negotiate the terms of a permanent injunction with input from Mr. Lee telephonically.

3.      Counsel for Plaintiff, David Bloch, indicated that as Plaintiff had not received a timely response to their proposed draft of a permanent injunction, and had incurred additional costs and fees in following up and attending the conference, that Plaintiff was no longer willing to settle this matter with a stipulated permanent injunction without monetary compensation.

4.      The court met with the parties and went over paragraph by paragraph the Plaintiff's draft proposed permanent injunction to identify where the parties were in agreement and where disputes remained.  Mr. Gile, with input from Mr. Lee telephonically, and Mr. Bloch and Plaintiff's duly authorized representative, Mike Leonard, reached an agreement on the terms of the stipulated permanent injunction.  The form of permanent injunction negotiated and agreed to among counsel and

1  Plaintiff's representative was reduced to writing and counsel for each side initialed each page of the
2  agreed upon form of stipulated permanent injunction.

3      5.     No agreement was reached concerning the monetary component of the settlement
4  Plaintiff demanded.

5      6.     Counsel for Defendant, Mr. Gile, attempted to reach an authorized representative of the
6  Defendant with settlement authority during the settlement conference, but was unsuccessful.

7      7.     The court indicated that an order to show cause would issue for the Defendant's failure
8  to appear with trial counsel, and a duly-authorized officer or representative of the Defendant with
9  settlement authority.  However, as counsel for the parties and the Plaintiff's authorized representative
10  had reached an agreement on the form of a stipulated permanent injunction, and the parties were still
11  discussing the monetary component of the settlement, the court agreed to hold issuance of an order to
12  show cause in abeyance to facilitate further discussions.

13      8.     The court suggested that counsel for Plaintiff provide counsel for Defendant with an
14  itemization of the costs and fees incurred for the necessity of attending the settlement conference at
15  which a duly-authorized representative of the Defendant and trial counsel was not present.  The court
16  also set this matter for a telephonic status check on Friday, May 4, 2012, at 3:45 p.m.

17      9.     At the May 4, 2012, status conference, the court inquired whether a settlement had been
18  reached.  Counsel for Plaintiff advised the court that the Defendant's monetary offer had been rejected.
19  The court inquired of counsel for Defendant, Mr. Lee, whether his client had authorized entry of the
20  form of permanent injunction that was negotiated by counsel, reduced to writing, and initialed by
21  counsel.  Mr. Lee indicated that his client had not agreed to one of the essential terms of the stipulated
22  form of permanent injunction.

23      10.    Neither Mr. Lee, California trial counsel for the Defendant, nor an officer or
24  representative of the Defendant with binding authority to settle this matter up to the amount of the claim
25  or last demand made was present for the settlement conference.  No request for an exception to the
26  personal attendance requirement was filed and served at least one week prior to the settlement
27  conference.

28  / / /

**DISCUSSION**

The court issued an Order to Show Cause (Dkt. #61) on May 9, 2012, requiring the Defendants to show cause why sanctions should not be imposed for its failure to comply with the court's Order (Dkt. #56) as set forth above.

**I.     The Parties Positions.**

        A.      Shenzhen's Response

Shenzhen's response to the order to show cause argues the court has the discretion under Rule 16(f) with regard to whether to impose sanctions on an attorney or party for failing to appear at a settlement or pretrial conference, failing to be substantially prepared or participate in good faith in the conference, or for failing to obey a scheduling or other pretrial order. Shenzhen asks that the court not award sanctions against it or its attorneys. Shenzhen represents it genuinely regrets that a party representative and its lead counsel, Otto Lee, failed to appear at the settlement conference. However, Shenzhen argues that is was operating under the reasonable good-faith belief that all authority needed to resolve the matter had been given. The parties had negotiated and come to a mutual agreement in principle upon the material terms of the settlement and under these circumstances sanctions are not warranted.

The response to the order to show cause relates the history of the settlement negotiations between the parties. Mr. Lee, on behalf of the Defendant, and Mr. Oh on behalf of the Plaintiff, engaged in negotiations in March 2012, which resulted in Mr. Oh conveying a draft proposed form of agreement to Mr. Lee on March 20, 2012. Mr. Lee responded verbally after the draft was sent to him a second time on March 27, 2012, that he would review the draft, discuss it with his client and get back to Mr. Oh with any revisions. However, Mr. Lee verbally informed Mr. Oh that the terms of the draft proposal were acceptable and he would only have minor revisions.

Having received no response from Shenzhen, on April 4, 2012, Aevoe's co-counsel, Thomas Kearney, sent a follow-up email to Mr. Lee about the proposed agreement. Mr. Lee claims he never saw this email. Between April 4, 2012, and the date of the April 26, 2012 settlement conference, counsel for Aevoe did not advise counsel for Shenzhen that Aevoe was no longer willing to resolve the case on the terms outlined in the March 27, 2012 draft. Counsel for Shenzhen "appreciates this Court's

frustration" at its failure to comply with the court's order.  Mr. Lee, acknowledges that local counsel, Mr. Gile, was not aware that Mr. Lee "was not accustomed to the in-person attendance requirement for parties at the settlement conference."  Mr. Lee also did not advise Mr. Gile that Mr. Lee was not planning to be physically present until approximately 4:45 p.m. the afternoon before the settlement conference.  The response also acknowledges that Mr. Gile was not aware that Mr. Lee had not made arrangements to insure that both he and an authorized client representative would attend the conference. Mr. Lee represents that he had full settlement authority from the client and was available throughout the duration of the settlement conference for consultation with Mr. Gile.  However, at the settlement conference, Aevoe "suddenly announced" that the previous terms of the settlement were no longer on the table and that a monetary settlement was expected in addition to a stipulated form of preliminary injunction.

Counsel for Shenzhen argues that the monetary sanctions Aevoe seeks are unreasonable and that the court should not award fees and expenses for preparing for and attending the settlement conference. If any sanctions are awarded for Shenzhen's failure to have a party representative and lead counsel at the hearing, it should not be based on the time Aevoe would have spent preparing for the settlement conference regardless of Shenzhen's "shortcomings".  Sanctions are especially not indicated where, as here, Aevoe has very little chance of being awarded attorneys fees on the merits of the litigation.

B.   Aevoe's Response

Aevoe's response disputes that the parties had reached a settlement in principle, although acknowledging that its counsel provided a draft settlement agreement to Mr. Lee on March 20 and 27, 2012.  Mr. Lee's only response to the proposed agreement was that he would confer with his client and get back with revisions.  He did not do so.  When counsel for Aevoe had not heard back from Mr. Lee, Aevoe inquired a third time whether the proposed settlement agreement was acceptable on April 4, 2012.  Shenzhen's lawyers acknowledge in their response to the order to show cause that they did not respond to this communication.

Additionally, Aevoe points out that the representation made by Mr. Lee in response to the order to show cause inaccurately claims he had full authority from the client to settle.  Mr. Lee lacked any monetary authority, and at the follow-up telephonic status conference on May 4, 2012, conducted by the

court, Mr. Lee indicated that his client had not agreed to one of the essential terms of the stipulated form of permanent injunction negotiated by counsel for the parties who were present at the settlement conference.

Counsel also disputes Shenzhen's representation that California courts in which Mr. Lee practices do not typically require a client representative to appear in person at settlement conferences. Counsel for Aevoe points out that every federal district court in California, including Mr. Lee's home Northern District of California, requires that a party representative with full settlement authority attend settlement conferences. Excerpts from the Local Rules of Practice of the Northern District of California, Eastern District of California, Central District of California, and Southern District of California are cited in support of Aevoe's position.

Aevoe spent $56,522.40 in legal fees and costs in connection with the April 26, 2012, settlement conference and subsequent briefing concerning this order to show cause and seeks that amount as sanctions. Aevoe and its counsel incurred $43,529.72 "in connection with the abortive Settlement Conference" and $12,992.75 responding to the order to show cause. Rule 16(f) authorizes sanctions for failure to comply with a scheduling or other pretrial order, and the purpose of sanctions is to compensate opposing parties for inconvenience and expense incurred because of non-compliance with the reasonable case management orders of the court.

Counsel for Aevoe argues that the court's Scheduling Order (Dkt. #56) was clear on its face. Aevoe also argues that the amount of sanctions it seeks is neither unprecedented nor particularly remarkable. It cites cases in which courts have awarded sanctions of far larger amounts.

Aevoe's request for sanctions is supported by the declaration of Josephine Binetti McPeak (Dkt. #65). Ms. McPeak avers that she billed the client $6,187.50 at the rate of $375/hr. for preparing for and attending the settlement conference and preparing for and participating in the court's May 4, 2012 status conference. She also billed $1,031.25 for 2.75 hours spent in replying to Shenzhen's response to the court's order to show cause at the same hourly rate. The fees and costs charged by the McDonald Carano Wilson law firm are the rates that reflect the customary rate charged to the firm's clients for similar litigation, and are comparable to the rates charged by attorneys at similarly situated Nevada-

/ / /

6

based firms.  McDonald Carano Wilson has received national recognition as one of the top law firms in the country.

Aevoe's response is also supported by the declaration of David Bloch (Dkt. #64) who avers that the firm incurred costs and billed the client for $37,342.22 for time spent preparing for and attending the settlement conference and post-conference analysis of available sanctions and related matters.  He reviewed and edited Winston & Strawn's bills and avers the fees described were reasonable and necessarily incurred and actually billed to the client.  The firm also incurred fees of $11,961.50 for analyzing the order to show cause and replying to Shenzhen's response to the order to show cause.  He identifies the five lawyers and senior paralegal who performed services at hourly rates ranging from $715/hr. for his own services, to $285/hr. for the services of his senior paralegal.  These are the normal and customary rates charged by Winston & Strawn for similar patent cases.  He opines that these rates are reasonable and comparable to the rates charged by attorneys at similarly rated law firms.  Winston & Strawn has also been nationally recognized for its excellence in intellectual property litigation practice.  His declaration identifies the years of experience and field of specialties of all of the lawyers and paralegal who performed the services described, and attaches copies of their curriculum vitae.

**II.     Applicable Law and Analysis**.

During the hearing on the order to show cause Mr. Lee acknowledged that he received the court's Order (Dkt. #56) setting the settlement conference and outlining the parties' responsibilities to prepare for and attend the conference.  He also acknowledged that he forwarded the order to his client.  He represented that he advised the client to be available for telephonic contact during the settlement conference.  Mr. Lee represented that several attempts were made to reach the client representative telephonically during the settlement conference without success because the client representative was in China and it was the middle of the night there.

Shenzhen does not dispute that it violated the court's order, or claim that the court's order was unclear in any respect.  Rather, pro hac vice counsel, Mr. Lee, asserts he was simply not accustomed to being required to personally attend a settlement conference, or have a client representative personally attend the settlement conference.  These representations are belied by the Local Rules of Practice in all of the federal district courts of California cited by Aevoe in its response.  Mr. Lee's representations are

1  also belied by a case cited in Shenzhen's own response to the order to show cause which indicates a

2  court previously awarded attorneys fees of $5,071.00 against Shenzhen for deciding not to attend or

3  participate in a court-ordered settlement conference.  See Response (Dkt. #62, 8:15-17).

4        Fed.R.Civ.P. 16(f) authorizes the court to impose sanctions on motion or on its own, including

5  any sanctions authorized by Rule 37(b)(2)(A)(ii-vii) if a party or its attorney:

6        (A) fails to appear at a scheduling or other pretrial conference;

7        (B) is substantially unprepared to participate in good faith–in the conference; or

8        (C) fails to obey a scheduling order or other pretrial order.

9        It is undisputed that Shenzhen failed to comply with the court's order.  Shenzhen does not

10  dispute any of the reasons the court required it to show cause why sanctions should not be imposed.

11  Shenzhen does not claim that its failure to comply with the court's order was either substantially

12  justified or harmless.  Rather, it argues the court should not award sanctions because Mr. Lee believed,

13  in good faith, that the parties had essentially reached agreement on the terms of the settlement before

14  the settlement conference.  Shenzhen accuses Aevoe of suddenly and without warning changing its

15  settlement position.  However, the record is quite clear that Aevoe prepared a draft proposed settlement

16  agreement and forwarded it to Mr. Lee on March 20, 2012, and received no response.  The email

17  transmitting the draft proposed agreement to Mr. Lee on March 20, 2012, is attached as Exhibit "A" to

18  Mr. Oh's declaration.  Mr. Lee does not claim it was not sent.  Rather, he claims he did not see it.  As a

19  result, another email and copy of the draft proposed agreement was sent to Mr. Lee on March 27, 2012.

20  Mr. Lee's declaration claims that informed Mr. Oh that the terms of the draft agreement were

21  acceptable, that he expected to have only minor revisions, and that he would talk to his client and get

22  back to Mr. Oh with any revisions.  He did not so.

23        On April 4, 2012, Aevoe's co-counsel, Mr. Kearney, sent Mr. Lee a follow-up email.  Again,

24  Mr. Lee claims he did not receive it.  A copy of the April 4, 2012 email from Mr. Kearney to Mr. Lee is

25  attached as Exhibit "E" to Mr. Oh's declaration.  The court candidly does not find Mr. Lee credible in

26  his assertions he did not receive these emails or draft proposed agreement.  However, even if the court

27  were to give him the benefit of the doubt, Mr. Lee does not dispute that he did not inform opposing

28  counsel that his client had accepted the terms of Aevoe's proposed agreement, or respond with any

request for revisions prior to the April 26, 2012 settlement conference. Under these circumstances, it is hardly surprising that Aevoe arrived at the settlement conference with its lawyers and client representative and after spending additional time and incurring additional attorneys fees was no longer willing to resolve this lawsuit without a monetary component. Shenzhen neither accepted the settlement proposal, nor responded with any request for revisions.

Moreover, although Mr. Lee again represents in response to the order to show cause that he had full settlement authority from his client, clearly he did not. During the settlement conference the court went over paragraph by paragraph the Plaintiff's draft proposed permanent injunction to identify where the parties were in agreement and where any disputes remained. Mr. Gile on behalf of the Defendant, with telephonic input from Mr. Lee, and Mr. Bloch and Plaintiff's representative, Mr. Leonard, reached an agreement on the terms of the stipulated permanent injunction. The agreement reached by those present at the settlement conference was reduced to writing and counsel for each side initialed each page of the agreed upon form of stipulated permanent injunction. No agreement was reached concerning the monetary component of Plaintiff's settlement demand. The court continued the matter for a status check until May 4, 2012, to allow the parties to continue their discussions, and held off entering the order to show cause hoping the parties would resolve the monetary issue and that an order to show cause would not be necessary.

At the May 4, 2012 status conference, the court specifically asked Mr. Lee whether Shenzhen's authorized representative had agreed to entry of the form of permanent injunction that was negotiated by counsel, reduced to writing, and initiated by counsel at the settlement conference. Mr. Lee initially tried to avoid answering the court's question. However, when again directly asked, he told the court that his client had not agreed to one of the essential terms of the stipulated form of permanent injunction negotiated and agreed to among the parties present at the settlement conference. The court was informed Mr. Lee, although not present, had agreed to all of the terms in his telephonic communication with Mr. Gile. Thus, Mr. Lee's representation that he had fully authority from the client to reach a settlement on the date of the settlement conference is simply not true.

Rule 16(f) gives the court broad discretion to sanction attorneys and parties who fail to comply with reasonable case management orders of the court to insure that they "fulfill their high duty to insure

1    the expeditious and sound management of the preparation of cases for trial." *Matter of Sanctions of*

2    *Baker*, 744 F.2d 1438, 1440 (10th Cir. 1994) (en banc).  The Ninth Circuit has held that the purpose of

3    Rule 16 is "to encourage forceful judicial management." *Sherman v. United States*, 801 F.2d 1133,

4    1135 (9th Cir. 1986); See also Fed.R.Civ.P. 16(f) Advisory Committee's note ("[E]xplicit reference to

5    sanctions reinforces the rule's intention to encourage forceful judicial management.") Violations of

6    Rule 16 are neither technical nor trivial. *Martin Family Trust v. Heco-Nostalgia Enterprises, Co.,* 186

7    F.R.D. 601, 603 (E.D. Ca. 1999).  Rule 16 is critical to the court's management of its docket and avoids

8    unnecessary delays in adjudicating the court's cases. *Id.*  The Ninth Circuit has emphasized that a case

9    management order "is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded

10   by counsel without peril." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992)

11   (internal quotations and citations omitted).  Disregard of a court order undermines the court's ability to

12   control its docket and rewards the indolent and cavalier. *Id.*  The court will therefore award sanctions

13   against Mr. Lee and Shenzhen for some, but not all of the attorneys fees and costs Aevoe seeks.

14        The Ninth Circuit affords trial courts broad discretion in determining the reasonableness of costs

15   and fees. *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992).  Although the district court has

16   discretion in determining the amount of the fee award, it must calculate awards for attorneys fees using

17   the "lodestar" method. *Camacho v. Bridgeport Financial, Inc.,* 523 F.3d 973, 978 (9th Cir. 2008).  The

18   lodestar is calculated by multiplying the number of hours the prevailing party reasonably expended by a

19   reasonable hourly rate. *Id.*  The district court may, in rare cases, if the circumstances warrant, adjust the

20   lodestar to account for other factors which are not subsumed within it. *Id*.  These factors were set out in

21   *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975), *cert. denied,* 425 U.S. 951

22   (1976).  Relevant factors include the preclusion of other employment by the attorney due to acceptance

23   of the case; time limitations imposed by the client or the circumstances; the amount involved and

24   results obtained; the undesirability of the case;[1] the nature and length of the professional relationship

25

26   ―――――――――――

27        [1]This factor has been called into question by the Supreme Court's ruling in *City of Burlington v.*

28   *Dague,* 505 U.S. 557, 561-564 (1992).  *See also Davis v. City & Cty. of San Francisco*, 976 F.2d 1536,

1   with the client; and awards in similar cases. *Id*. at n.1.  In most cases, the lodestar figure is a

2   presumptively reasonable fee award. *Camacho,* 523 F.3d at 978.

3          As a general rule, the court considers the reasonable hourly rate in the relevant community

4   which is the forum in which the case is pending.  *Id.*  The court may consider rates outside the forum if

5   local counsel was unavailable because they lacked the degree of experience, expertise, or specialization

6   required to properly handle the case. *Id*. (*citing Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997)).

7          The United States Supreme Court has recognized that determining an appropriate market rate

8   for the services of a lawyer is inherently difficult for a number of reasons. *Blum v. Stenson*, 465 U.S.

9   886, 895 n.11 (1984).  Traditional supply and demand principles do not ordinarily apply to prevailing

10  market rates for the services of lawyers. *Id.*  The hourly rates of lawyers in private practice vary widely.

11  *Id.*  The type of services provided by lawyers, as well as their experience, skill, and reputation, varies

12  extensively, even within a law firm. *Id.*  The fee is usually discussed with the client and may be

13  negotiated. *Id*.  In determining the reasonableness of attorneys fees, the hourly rate is now generally

14  recognized.  However, "courts properly have required prevailing attorneys to justify the reasonableness

15  of the requested rate or rates." *Id*.  In *Blum*, the Supreme Court stated that "[t]o inform and assist the

16  court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory

17  evidence–in addition to the attorneys' own affidavits–that the requested rates are in line with those

18  prevailing in the community for similar services by lawyers of reasonably comparable skill, experience,

19  and reputation." *Id.*

20         The Ninth Circuit has stated that affidavits of the fee applicant's attorneys and other attorneys

21  regarding prevailing fees in the community, and rate determinations in other cases, are satisfactory

22  evidence of the prevailing market rate. *Camacho*, 523 F.3d at 980 (*citing United Steel Workers of Am.*

23  *v. Phelps Dodge Corp.,* 896 F.2d 403, 407 (9th Cir. 1990)) (internal quotation marks omitted).

24

25  _____

26  1546 n.4 (9th Cir. 1992), *vacated on other grounds,* 984 F.2d 345 (9th Cir. 1993) (noting "[t]he *Dague*

27  opinion can also be read as casting doubt on the relevance of a case's desirability to the fee calculation")

28  (internal quotation marks omitted).

1    However, declarations of the fee applicant do not conclusively establish the prevailing market rate.  *Id.*

2         The court finds that McDonald Carano Wilson's standard hourly rate of $375/hr. is a reasonable

3    hourly rate in this forum and reflects customary hourly rates charged to clients in similar types of

4    litigation.  Pro hac vice counsel from the firm of Winston & Strawn LLP practice outside this forum.

5    The court does not doubt that the law firm commands the hourly rates indicated in Mr. Bloch's

6    declaration, or that these hourly rates are reasonable and customary in the forum in which the law firm

7    practices, particularly in the intellectual property field.  However, local counsel clearly has the degree of

8    experience, expertise or specialization required to properly handle this case.  The court will therefore

9    award attorneys fees and costs incurred by Winston & Strawn at the rate of $400/hr. taking into account

10   that lead counsel, Mr. Bloch, is a partner with the firm who concentrates his practice on complex

11   intellectual property litigation.  The court will not award attorneys fees and costs incurred for the time

12   spent preparing the confidential settlement memorandum or other preparation involving the client prior

13   to the settlement conference.  The court will, however, award attorneys fees for the time spent during

14   the settlement conference, follow-up communications necessitated by Shenzhen's failure to have an

15   authorized representative present at the settlement conference, and preparation and time spent for the

16   May 4, 2012 follow-up status conference.

17        At the hearing, Mr. Gile indicated that he had spent approximately ten hours of time attending

18   the settlement conference and following up on settlement discussions.  The court finds that McDonald

19   Carano Wilson billed 12.5 hours for time spent preparing for and representing the client at the

20   settlement conference, following up with defense counsel and co-counsel, and preparing for and

21   representing the client at the telephonic status hearing on May 4, 2012.  The court also finds that

22   McDonald Carano Wilson billed 2.75 hours for reviewing the court's order to show cause, Shenzhen's

23   response to the order to show cause, and editing Aevoe's response, and conferring with pro hac vice

24   counsel.  The court finds this amount of time reasonable and customary for the services described and

25   will therefore award sanctions of $5,718.75 for the 15.25 hours of time at the rate of $375/hr. billed by

26   McDonald Carano Wilson.

27        Mr. Bloch billed 11.3 hours for traveling to and attending the settlement conference which the

28   court finds reasonable and customary.  He billed 5.3 hours for post-conference analysis of available

sanctions, preparing and editing a letter to counsel for Defendants, follow-up negotiations and preparing for and attending the telephonic status conference with the court.  The court find this amount of time is reasonable and necessary for the tasks described given Mr. Bloch's role as lead counsel.  The court will therefore award sanctions of 16.6 hours of Mr. Bloch's time at the rate of $400/hr. for a total of $5,840.00 with transportation and lodging expenses of $848.22, for a total of $6,688.22.  Three different attorneys from the law firm spent a total of 25.7 hours analyzing the order to show cause, Shenzhen's response, and Aevoe's own response.  The court does not doubt that this amount of time was actually spent.  However, while the law firm and its client may agree to multiple attorneys working on a case, the court will not impose sanctions against Shenzhen for the entire amount.  Reviewing the moving and responsive papers and supporting declarations and exhibits, the court finds that 12.5 hours at the rate of $400/hr. for a total of $5,000.00 should be awarded as a sanction against Shenzhen for this work.

For the reasons stated,

**IT IS ORDERED** sanctions in the amount of $17,406.97 are awarded to Plaintiff for costs and attorneys fees incurred by McDonald Carano Wilson and Winston & Strawn against Shenzhen and its counsel, Mr. Lee, jointly and severally, for their failure to comply with the court's Order (Dkt. #56).

Dated this 14th day of June, 2012.

Peggy A. Leen
United States Magistrate Judge

13